**THOMPSON COBURN LLP**
**LUKAS SOSNICKI, CSB 295895**
lsosnicki@thompsoncoburn.com
10100 Santa Monica Blvd., Suite 500
Los Angeles, California 90067
Tel: 310.282.2500 / Fax: 310.282.2501

*Attorney for Plaintiffs Charter Communications, Inc. and Charter Communications Holding Company, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., and CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AARON M. KRUGEL, CM ENTERPRISE HOLDINGS, LLC and LEADING LIGHT HOLDINGS, LLC, <br><br> Defendants. | Case No.  8:26-cv-1307 <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Charter Communications, Inc. and Charter Communications Holding Company, LLC (collectively, **Charter** or **Plaintiffs**) allege as follows against Defendants Aaron M. Krugel, CM Enterprise Holdings, LLC (**CM Enterprise**), and Leading Light Holdings, LLC (**Leading Light**) (collectively, **Defendants**):

## INTRODUCTION

1.     Charter is one of the largest telecommunications providers in the United States. Charter owns numerous federally registered trademarks related to its "Spectrum," "Spectrum Business" (f/k/a "Spectrum Enterprise"), "Spectrum Community Solutions," and other brands.

1

2.      Defendant Krugel has conducted a large-scale email campaign targeting thousands of current and prospective Spectrum customers. In these emails, Krugel uses email addresses ending in "@spectrum.net" that follow professional conventions such as first-name and last-name combinations (e.g., "aaron.voechting@spectrum.net"), mimicking the format typically associated with legitimate corporate employee accounts. The emails further contain signature blocks designed to mislead recipients into believing he is a Spectrum employee, and subject lines referencing "Spectrum Solutions for Enterprise Business." These emails are designed to deceive and confuse, and actually deceived and confused, recipients into believing that Krugel is employed by Charter.  In at least one instance, Krugel used the trust created by his false affiliation with Charter to harass and threaten an individual.

3.      Krugel is not an employee of Charter. He has no affiliation with Charter and no authorization to use Charter's name or trademarks. Rather, Krugel gained access to "spectrum.net" email addresses by using a residential Spectrum account belonging to his mother, who is a Spectrum subscriber.

4.      Krugel sends these fraudulent emails to deceive the recipient into believing he is a Charter employee. Using this false affiliation, Krugel then schedules meetings with existing and prospective customers to review their current services and pricing. His ultimate goal, however, is to take advantage of these deceived and confused customers by diverting them away from Charter or from Charter's authorized representatives.

5.      On July 18, 2024, Charter sent a cease and desist letter to Krugel and business entities he owns and operates, including CM Enterprise and Leading Light, demanding that they stop using Spectrum trademarks and demanding that Krugel stop misrepresenting himself as a Spectrum employee.

6.      Krugel and his affiliated entities did not respond to Charter's letter, though they appeared for a time to have ceased the infringing conduct.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7. Charter has recently learned that Defendants resumed their unlawful behavior, sending over 30,000 fraudulent emails since late October. Krugel sent over 20,000 emails using "spectrum.net" email addresses in November 2025 alone, and at least 2,800 more from mid-December 2025 through mid-January 2026. These emails bear subject lines such as "Spectrum Solutions for Enterprise Business - Network Review."

8. Defendants' conduct constitutes trademark infringement under 15 U.S.C. § 1114(1) and California law, false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), and unfair competition under California Business and Professions Code § 17200. Charter seeks monetary damages and injunctive relief.

## THE PARTIES

9. Plaintiff Charter Communications, Inc. is a Delaware corporation with its principal place of business in Stamford, Connecticut.

10. Plaintiff Charter Communications Holding Company, LLC is a Delaware limited liability company with its principal place of business in Stamford, Connecticut.

11. Defendant Aaron M. Krugel is an individual who, on information and belief, resides at 306 Jasmine Street, Laguna Beach, California 92651. Krugel has also been known to use the aliases "Aaron Banks," "Julia Maloney," "Aaron Voechting," "Aaron V," and "Eric Hall."

12. Defendant CM Enterprise Holdings, LLC is a limited liability company organized under the laws of the state of Wyoming. CM Enterprise maintains a principal place of business at 2108 N St Ste N Sacramento, CA 95816. CM Enterprise operates under the fictitious business name "Telecom Brokerage Group."

13. Defendant Leading Light Holdings, LLC is a limited liability company organized under the laws of the state of Wyoming. It maintains a principal place of business at 306 Jasmine Street, Laguna Beach, California 92651.

3

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

14. On information and belief, Krugel owns, controls, and operates both CM Enterprise and Leading Light.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 because this action arises under the Lanham Act, 15 U.S.C. §§ 1114, 1125.

16. This Court has supplemental jurisdiction over Charter's state law claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Charter's claims under the Lanham Act.

17. This Court has personal jurisdiction over Defendants. Defendant Krugel is a citizen of California and has conducted his infringing activities in California. On information and belief, Krugel, acting on his own behalf and on behalf of CM Enterprise and Leading Light, sent the infringing emails from California. CM Enterprise and Leading Light also maintain their principal places of business in California.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Krugel resides in this district and all Defendants are residents of California. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Charter's claims occurred in this district.

## FACTUAL ALLEGATIONS

19. Charter is a leading broadband connectivity company and cable operator. It is widely recognized by consumers as a reliable and reputable provider of communications services.

20. Through its "Spectrum Business" division, Charter provides fiber-based networking and services to enterprise-level business customers.

21. Charter owns federal trademark registrations for its SPECTRUM mark and related marks (collectively, the **Spectrum Marks**) bearing serial numbers

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

86794492, 97305949, 86783673, 87958589, 86550167, 86490161, 99107753, 98120803, 97799707, 86979569, 97975972, 97601124, 86979567, 97305944, 86117870, 86565037, 97799691, 97305957, and 88132817. The Spectrum Marks are registered on the Principal Register of the United States Patent and Trademark Office.

22.    Charter owns and operates the internet domain "spectrum.net." Charter provides its residential customers with email accounts using the "spectrum.net" domain as part of their service subscription.

23.    The Spectrum Marks are famous marks within the meaning of 15 U.S.C. § 1125(c). American consumers in Charter's geographic areas of service widely recognize the Spectrum brand as identifying Charter's goods and services.

24.    Charter first became aware of Krugel's infringing conduct in the summer of 2024.

25.    At that time, Charter's investigation revealed that Krugel had used "spectrum.net" email addresses associated with his mother's residential Spectrum account, including aaron.voechting@spectrum.net and aaronkrugel1@spectrum.net, to impersonate a Spectrum Business representative and contact existing Spectrum enterprise-level customers to make attempted sales orders.

26.    Charter's investigation further revealed that Krugel used signature blocks in his emails that were designed to deceive Spectrum's enterprise-level customers into believing he was a Spectrum representative. These signature blocks include but are not limited to the following:

> Aaron Voechting
> Enterprise Solutions – Fiber Executive
> D: (619) 812-4495
> E: aaron.voechting@spectrum.net
>
> Aaron Krugel
> Enterprise Solutions – Fiber Executive
> D: (312) 680-8184
> E: aaronkrugel1@spectrum.net

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Julia Maloney
Enterprise Solutions – Fiber Executive
D: (619) 812-4495
E: julia.maloney@spectrum.net

Aaron Banks
Fiber Solutions Specialist
D: (312) 872-3315
E: aaron.banks@spectrum.net

Eric Hall
Enterprise Accounts, Solution Manager
D: 619-812-4495
E: hall_eric@spectrum.net

27.	In his communications with Spectrum customers, Krugel made misrepresentations and false statements about Spectrum services, policies, and procedures, and improperly disclosed confidential information.

28.	Leading Light had previously operated under an independent partner agreement with Intelisys, Inc., which allowed Leading Light to resell Spectrum services. Intelisys terminated Leading Light's Partner Agreement after learning of Krugel's fraudulent activity and violation of supplier policies.

29.	Despite the termination of Leading Light's partner agreement, Krugel continued his infringing activity, including sending emails to Spectrum's enterprise-level customers.

30.	As a result of Krugel's conduct, Spectrum terminated Krugel as a selling partner for the Spectrum Partner Program. Spectrum no longer accepts orders from Krugel or any of his business organizations.

31.	On July 18, 2024, Charter sent Krugel a letter demanding that Krugel immediately cease and desist use of any Spectrum trademarks, including using any "spectrum.net" email domain, misleading signature block, or misrepresentation that he is a Spectrum employee.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

32.    Though Defendants' infringing activity appeared to stop for a period of time following the cease and desist letter, Krugel and his affiliated entities subsequently resumed and expanded their infringing activity.

33.    More recently, Krugel sent emails from at least three different "spectrum.net" email addresses: aaron.banks@spectrum.net, hall_eric@spectrum.net, and aaron.voechting@spectrum.net. On information and belief, these email addresses were also associated with his mother's residential Spectrum account.

34.    Krugel has sent, and may still be sending, emails to thousands of entities, including current Spectrum customers. On information and belief, the emails are sent for the purpose of scheduling meetings to review the recipients' current services and pricing for Internet and other services that Spectrum offers.

35.    Many, if not most, of these emails include the subject line "Spectrum Solutions for Enterprise Business - Network Review."  Beyond his use of "Spectrum" in the subject line, Krugel's use of the term "Review" is calculated to deceive existing Spectrum customers by implying that the purpose of the communication is to examine the recipient's current Spectrum network services and pricing. Existing Spectrum customers would expect such a communication to come from an actual Spectrum employee.

36.    On information and belief, Krugel sends his infringing emails from California.

37.    Charter's investigation revealed that, in the last few months alone, Krugel has sent approximately 30,000 emails using the "spectrum.net" email addresses.

38.    Krugel's emails have deceived and caused actual confusion among Spectrum customers, potential customers, and non-customers.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

39. Many Spectrum customers have reported Krugel's unlawful activity to Charter. These customers were all misled to believe Krugel was affiliated or sponsored by Spectrum.

40. As recently as January 2026, a Charter customer reported to Charter that it had opened an order with an individual using the names "Aaron Voechting" and "Eric Hall."

41. The customer was confused and initially believed that this individual was affiliated with or sponsored by Spectrum.

42. When the customer directly asked whether Krugel—operating under the aliases "Aaron Voechting" and "Eric Hall"—was with Spectrum, Krugel responded that he is "outside sales with Spectrum." Krugel further stated that another team attempting to close the same sale was "more than likely a Charter rep, different orgs."

43. Krugel's conduct has also caused financial loss. For example, in April 2024, Krugel, operating under the alias "Aaron Voechting," contacted an existing Spectrum enterprise-level customer whose account was still under contract with an early termination penalty provision. Krugel offered the customer reduced pricing for network services. When the customer asked whether there would be any penalty for closing his existing account and signing a new contract, Krugel assured him that there would be no early termination fee.

44. Relying on Krugel's representations, the customer signed a new contract and had new services installed. When the customer contacted Spectrum to cancel the original account, he learned that his existing contract included an early termination fee that Krugel had no authority to waive.

45. The early termination fee on the customer's existing contract was $52,164.

46. In order to mend the customer relationship, Charter was required to waive the early termination fee as a result of the confusion caused by Krugel's misrepresentations. Because many of Spectrum's enterprise-level customers have

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

contracts containing early termination fee provisions, Krugel's conduct creates a significant risk of similar harm.

47. Krugel's conduct during this period has disrupted other Charter customer relationships as well. In January 2026, Krugel emailed another Charter customer under the alias "Eric Hall." The email contained the subject line "Spectrum Enterprise - Connectivity & Cost Savings" and offered services such as fiber internet, voice solutions, and contract renewals and upgrades, any of which an existing customer would expect to receive from an actual Charter employee.

48. In February 2026, the customer responded to Krugel's fraudulent email and copied Charter's actual account representative, treating them interchangeably as members of the same team. Despite multiple attempts by Charter's sales personnel to re-engage the customer and clarify that Krugel has no affiliation with Charter, the customer has not responded to Charter.

49. Krugel's impersonation has consistently caused customers to disengage from Charter after confusing him for an authorized representative. Charter has reason to believe that the customer—who mistakenly believes it is dealing directly with an authorized Charter employee—will disconnect its existing service and place a new order through an unaffiliated third-party reseller as a result of Krugel's conduct.

50. Defendants have also unlawfully misappropriated Charter's confidential and proprietary business information. Specifically, Krugel, operating under the alias "Eric Hall," has obtained and distributed Charter's confidential internal pricing materials, including proprietary discretionary pricing rate cards intended solely for Charter's internal use, to customers and prospective customers. Charter's internal pricing materials are confidential, and Krugel is not authorized to distribute those materials to customers or third parties.

51. Krugel's distribution of Charter's confidential pricing information has interfered with Charter's ongoing sales negotiations, undermined Charter's ability to quote pricing to customers, and caused confusion among customers who have

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

returned to Charter with complaints after being misled by Krugel's representations.

52. On information and belief, Defendants are also conducting their infringing and deceptive activities through a value-added reseller (**VAR**), a third-party company that purchases Spectrum services and products and resells them to end customers.

53. Because the relevant contracts in these instances are executed between the customer and the VAR rather than directly with Spectrum, Charter has limited ability to remedy the harms caused to those customers.

54. Krugel has also harassed Spectrum's potential customers. In November 2025, a non-customer reported Krugel's conduct directly to Charter, believing that Krugel was a Charter employee. The non-customer filed a complaint through Charter's customer concern reporting system after receiving harassing emails from Krugel operating under the alias "Eric Hall" and using the email address "hall_eric@spectrum.net."

55. In his initial email to the non-customer, Krugel used a signature block designed to deceive recipients into believing he was a Spectrum employee. The signature block identified Krugel as "Eric Hall, Enterprise Accounts, Solution Manager" and included a "spectrum.net" email address.

56. When the non-customer did not agree to schedule a meeting with Krugel, Krugel sent an aggressive and harassing email in which he revealed that he had obtained the non-customer's home address and mocked her personal vehicle and financial situation.

57. The non-customer complained to Charter, stating that she believed Krugel "is using Spectrum's ability to look up addresses to locate my home." She requested that Charter take action to stop Krugel's behavior.

58. Charter confirmed to the non-customer that Krugel was not a Charter employee and that Charter did not possess the non-customer's personal information. The non-customer's belief that Krugel was a Charter employee with access to

10

sensitive customer data demonstrates the effectiveness of Krugel's deceptive conduct and the confusion resulting from his conduct.

59.    These are just a few examples of the actual confusion caused by Defendants. Without court intervention, Defendants will continue their infringing, deceptive, and harassing conduct.

60.    Charter has taken steps to mitigate the harms caused by Defendants.  In January 2026, Charter removed the "spectrum.net" email addresses used by Krugel from his mother's account and removed Krugel as an authorized user on that account. These measures, however, provide only a temporary solution, as Krugel has multiple avenues to resume his infringing conduct.

**<u>COUNT I: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)</u>**

**(All Defendants)**

61.    Charter realleges and incorporates by reference the allegations set forth in paragraphs 1 through 60.

62.    Charter owns valid federal trademark registrations for the Spectrum Marks.

63.    Defendants, without authorization from Charter, have used the Spectrum Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of services.

64.    Defendants' unauthorized use of the Spectrum Marks is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, origin, sponsorship, or affiliation of Defendants' services.

65.    Defendants' unauthorized use of the Spectrum Marks has caused actual confusion among consumers.

66.    Defendants' acts constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

67.    Defendants' acts have been willful. Defendants received Charter's cease and desist letter in July 2024, which put them on notice that their use of the Spectrum

Marks was unauthorized and unlawful. Despite this notice, Defendants have continued their infringing activity.

68.    Charter has suffered and will continue to suffer damage and irreparable harm as a result of Defendants' infringement.

## COUNT II: FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(a)
### (All Defendants)

69.    Charter realleges and incorporates by reference the allegations set forth in paragraphs 1 through 68.

70.    Defendants' use of the Spectrum Marks is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Charter, as to the origin, sponsorship, or approval of Defendants' services by Charter.

71.    Defendants' use of "spectrum.net" email addresses, combined with signature blocks identifying Defendants as Spectrum employees and subject lines referencing Spectrum Enterprise services, creates confusion, mistake, and the false impression that Defendants are affiliated with, sponsored, or employed by Charter.

72.    Defendants' conduct has caused actual confusion among Spectrum customers, potential customers, and non-customers.

73.    Defendants' acts constitute false designation of origin in violation of 15 U.S.C. § 1125(a).

74.    Charter has suffered and will continue to suffer damages and irreparable harm as a result of Defendants' conduct.

## COUNT III: TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)
### (All Defendants)

75.    Charter realleges and incorporates by reference the allegations set forth in paragraphs 1 through 74.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

76.    Defendants are making use of the Spectrum Marks in commerce by using "spectrum.net" email addresses, signature blocks identifying themselves as Spectrum employees, and subject lines referencing Spectrum Enterprise services.

77.    Defendants' use of the Spectrum Marks began after the Spectrum Marks became famous.

78.    Defendants' use of the Spectrum Marks is likely to cause dilution by blurring of the Spectrum Marks. Defendants' use of the Spectrum Marks impairs the distinctiveness of the Spectrum Marks by creating an association between the Spectrum Marks and Defendants' unauthorized services.

79.    Defendants' use of the Spectrum Marks is likely to cause dilution by tarnishment of the Spectrum Marks. Defendants' deceptive conduct and misrepresentations harm the reputation of the Spectrum Marks by associating those marks with fraudulent and misleading services and business practices.

80.    Defendants' acts constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

81.    Charter has suffered and will continue to suffer damages and irreparable harm as a result of Defendants' conduct. Charter has no adequate remedy at law.

## COUNT IV: TRADEMARK INFRINGEMENT
## UNDER CALIFORNIA LAW
### (All Defendants)

82.     Charter realleges and incorporates by reference the allegations set forth in paragraphs 1 through 81.

83.    Charter owns common law trademark rights for the Spectrum Marks.

84.    Defendants, without authorization from Charter, have used the Spectrum Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of services.

13

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

85. Defendants' unauthorized use of the Spectrum Marks is likely to cause confusion, or to cause mistake, or to deceive consumers as to the source, origin, sponsorship, or affiliation of Defendants' services.

86. Defendants' unauthorized use of the Spectrum Marks has caused actual confusion among consumers.

87. Defendants' acts constitute trademark infringement in violation of California common law.

88. Charter has suffered and will continue to suffer damages and irreparable harm as a result of Defendants' infringement.

## COUNT V: UNFAIR COMPETITION UNDER
## CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### (Against All Defendants)

89. Charter realleges and incorporates by reference the allegations set forth in paragraphs 1 through 88.

90. Defendants' conduct constitutes a fraudulent business practice under California Business and Professions Code § 17200 because it is likely to deceive members of the public. A significant portion of targeted consumers, acting reasonably, have been misled into believing Defendants were affiliated with or employed by Charter.

91. Defendant's conduct is tethered to violations of the Lanham Act and California common law, as alleged above.

92. As a result of Defendants' unfair competition, Charter has been damaged, injured and has lost money or property.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charter Communications, Inc. respectfully requests that this Court enter judgment against Defendants and award the following relief:

14

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1.    Preliminary and permanent injunctions enjoining Defendants and their officers, agents, servants, employees, attorneys, successors, assigns, and all person acting in concert with them from:

(a)    Using the Spectrum Marks, including using any "spectrum.net" email addresses, in connection with the advertising, marketing, promotion, sale, or offering for sale of any goods or services;

(b)    Representing themselves as employees, agents, or representatives of Charter or any of its affiliates;

(c)    Entering into, renewing, or maintaining any value-added reseller ("VAR") agreement or similar third-party distribution agreement for the purpose of offering, marketing, or selling services under or in connection with the Spectrum Marks;

2.    An award of actual damages sustained by Charter as a result of Defendants' conduct;

3.    Equitable disgorgement of Defendants' profits attributable to their infringing conduct;

4.    Costs of corrective advertising to undo the confusion and injuries caused by Defendants' infringements;

5.    An award of treble damages;

6.    An award of punitive damages;

7.    An award of reasonable attorney's fees and costs;

8.    Pre- and post-judgment interest, as allowed by law; and

9.    Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff Charter Communications, Inc. demands a trial by jury on all triable issues.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DATED:  May 26, 2026

**THOMPSON COBURN LLP**

By:  */s/ Lukas Sosnicki*

**LUKAS SOSNICKI**
*Attorney for Plaintiffs Charter Communications, Inc. and Charter Communications Holding Company, LLC*

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF